T.C. Memo. 1997-438


UNITED STATES TAX COURT


RICHARD A. PETTIT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17758-96.              Filed September 25, 1997.


Frank W. Louis, for petitioner.

Meryl Silver, for respondent.


MEMORANDUM OPINION


DINAN, Special Trial Judge:   This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax for 1990 in the amount of $7,169.

After concessions by petitioner,[2] the issue for decision is whether petitioner's claimed loss is properly characterized as an ordinary loss or a capital loss.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Niantic, Connecticut, on the date the petition was filed in this case.

Petitioner has been an airline pilot for American Airlines since October 1985. During and preceding the taxable year in issue, he bid his flight schedule on a reserve basis which required him to be "on call" 20 days per month but guaranteed him 10 days off per month. Reserve pilots are required to be available to fly on short notice in the event of a pilot scheduling problem. As long as he remained in his home locality and carried a beeper or cellular phone by which he could be contacted, petitioner was free to use his "on call" time as he wished. Petitioner's actual flight time averaged 4 to 6 days per month.

---

[2] Petitioner concedes that he is not entitled to dependency exemption deductions for his two daughters, Christy and Jenna, for 1990. Petitioner also concedes that he received and failed to report interest income in the amount of $13 during 1990.

With such a substantial amount of free time, petitioner obtained a Connecticut home improvement contractor's license and started a construction business in 1987. The business provided him with financial security in the event his piloting career was not successful. He specialized in carpentry work on home improvements such as remodelings, additions, and decks.

Petitioner believed that there was higher income potential in constructing new homes than remodeling existing ones. In March 1989, he acquired an unimproved lot in East Lyme, Connecticut (East Lyme property) for the purpose of building a single family home. The East Lyme property was petitioner's first new home construction project. Petitioner wanted to establish a reputation for himself as a new home builder and anticipated that the East Lyme property would serve as his "calling card". He believed people would see the quality of his work and hire him to build other new homes.

Petitioner obtained a second mortgage on his personal residence to finance the 10-percent downpayment on the unimproved lot. The balance of the funds for the construction project was obtained in a commercial construction loan from Mechanic's Savings Bank in Hartford, Connecticut. The bank took a security interest in the East Lyme property as collateral for the loan.

There was a significant amount of risk for petitioner in building a home without a predetermined buyer, but he believed that he would make a modest profit on the East Lyme property and

attract more customers for his business.  He enlisted a real estate agent in April 1989 to promote its sale.

The construction project proceeded smoothly.  As the general contractor, petitioner constructed the majority of the two-story house himself, including framing, roofing, siding, and installing the windows, cabinets, and doors.  He obtained assistance from his father and other individuals for certain work such as erecting the frame of the house, insulating the house, and constructing the fireplace, chimney, and staircases.  In addition, the plumbing and electrical wiring were required by law to be performed by licensed subcontractors.

In February 1990, petitioner and his wife separated.  The problems that resulted had a serious negative impact on his construction business.  For a period of time immediately following the separation, petitioner's wife took possession of his truck with all of his tools.  Shortly thereafter, she placed a lien on the East Lyme property to protect her interests in the event it was sold by petitioner.  The additional legal issues connected with the lien discouraged potential buyers.  In addition, the real estate market took a significant downturn in the early 1990's.  Under these circumstances, petitioner was unable to secure a buyer for the East Lyme property.

Petitioner could not make the construction loan payments as a result of financial difficulties caused by his separation.  He deeded the East Lyme property to Mechanics Savings Bank in lieu

of foreclosure on October 5, 1990.  The bank sold the property on October 31, 1990.

Petitioner thereafter abandoned his construction business. He began flying on a full-time schedule and has since been promoted from co-pilot to international co-pilot to captain.

Petitioner claimed a Schedule C business loss resulting from his construction activity in the amount of $25,621 on his 1990 return.  In the statutory notice of deficiency, respondent recharacterized petitioner's claimed ordinary loss as a long-term capital loss.  In so determining, respondent limited petitioner's 1990 loss deduction to $1,500, but allowed the excess loss in the amount of $24,121 as a long-term capital loss carryover.[3]

Respondent's determinations in the statutory notice of deficiency are presumed to be correct, and petitioner bears the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 165(a) provides that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.  Losses from the sales or exchanges of capital assets are allowed only to the extent allowed in sections 1211 and 1212.  Sec. 165(f).

---

[3]    In allowing the loss, we find that respondent has conceded that the amount of the claimed loss is correct.  We therefore only address the issue of the characterization of the claimed loss.

In the case of a taxpayer other than a corporation, section 1211(b) allows losses from the sales or exchanges of capital assets only to the extent of the gains from such sales or exchanges, plus (if such losses exceed such gains) the lower of (1) $3,000 ($1,500 in the case of a married individual filing a separate return), or (2) the excess of such losses over such gains. Any net capital loss in excess of the amount allowed by section 1211(b) for the taxable year must be carried over to the succeeding taxable year. Secs. 1212(b), 1222(10).

A capital asset is generally defined as property held by the taxpayer, whether or not connected with his trade or business. Sec. 1221. However, section 1221(1) provides in part that property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business does not constitute a capital asset. The purpose of the section 1221(1) exclusion is to "differentiate between gain derived from the everyday operations of a business and gain derived from assets that have appreciated in value over a substantial period of time." McManus v. Commissioner, 65 T.C. 197, 212 (1975), affd. 583 F.2d 443 (9th Cir. 1978) (citing Malat v. Riddell, 383 U.S. 569, 572 (1966)).

Petitioner's position is that the East Lyme property was held primarily for sale to customers in the ordinary course of his construction business and therefore does not constitute a capital asset under section 1221(1). He argues that he is

entitled to deduct the full amount of his loss under section 165(a).

Respondent's position is that petitioner's loss is limited by section 165(f) because the East Lyme property was held by petitioner as a capital asset. Respondent argues that the East Lyme property does not fall within the section 1221(1) exception for property held primarily for sale to customers in the ordinary course of a trade or business because petitioner was not in the business of buying and selling real estate.

The question of whether property is held primarily for sale to customers in the ordinary course of the taxpayer's trade or business is a question of fact that depends on the circumstances of each case. McManus v. Commissioner, supra at 211. After fully considering the record in this case, we find that petitioner did not hold the East Lyme property as a capital asset.

The East Lyme property construction project and its subsequent disposition arose within the context of petitioner's existing construction business.[4] See S & H , Inc. v. Commissioner, 78 T.C. 234, 243 (1982). Respondent attempts to isolate petitioner's activity with respect to the East Lyme

---

[4] The fact that petitioner simultaneously worked as an airline pilot does not preclude a finding that he was engaged in the construction business, since a taxpayer may be engaged in more than one business. S & H , Inc. v. Commissioner, 78 T.C. 234, 243 (1982); Curphey v. Commissioner, 73 T.C. 766, 775 (1980).

property from his previous construction activity, and respondent tests for the existence of a trade or business using a number of factors relevant to real estate dealers. See United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969). We find that the controlling factor in this case is the extent to which petitioner developed the East Lyme property.

Petitioner did not purchase the East Lyme property with the intent of holding it as an investment. Rather, his intent was to increase its value by personally constructing a house on it and selling it for a profit. In this case, the fact that he hired a real estate agent to help him sell the property emphasizes the point that the profit which he sought flowed from his construction work, not his ability to buy and sell real estate.

The facts of this case are comparable to those in Heebner v. Commissioner, 280 F.2d 228, 233 (3d Cir. 1960), affg. 32 T.C. 1162 (1959), in which the Court of Appeals for the Third Circuit found that--

> the sale of real estate here was but one aspect of the entire transaction. There is absolutely no reason for treating the profit from the building transaction here any differently because one small aspect of it involved a sale of land. The land under this factual pattern was merely another commodity, such as lumber, steel and bricks, which went into the finished product * * *

In Heebner, the taxpayer husband, an architect and builder, engaged in package building[5] to get his "foot in the door as a

---

[5]    A package builder not only undertakes the construction of a building but also arranges for the design, location, and

builder."  The Court of Appeals for the Third Circuit affirmed the Tax Court's holding that he was not entitled to capital gain treatment on the disposition of the property because his profit resulted from the operation of a business.  Id. at 234.

Likewise, the general nature of the East Lyme project was not significantly different from petitioner's previous home improvement projects.  His business was building and selling home improvements, which in this case involved an entire home.  The fact that the disposition included a plot of land does not convert the entire finished product into a capital asset.

Moreover, assuming arguendo that petitioner's previous construction work constituted a separate business because he had never previously constructed a new home, it is clear from the facts in this case that petitioner's extensive participation in the development of the East Lyme property constitutes a business activity in and of itself.[6]  His subsequent abandonment of the construction business and decision to become a full-time airline pilot is understandable given the personal and financial problems he experienced during 1990.  These events do not serve to

---

financing of the building so the purchaser is delivered a completed project, i.e., a package.

[6]    We have previously held that a taxpayer may treat the gain or loss from one venture or sale as ordinary income or loss derived from a trade or business.  Morley v. Commissioner, 87 T.C. 1206 (1986).

diminish petitioner's business objective that existed prior to his separation from his former wife.

We hold that petitioner's loss with respect to the East Lyme property constitutes an ordinary loss incurred within the scope of his construction business.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.